JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTIN McCUTCHEON, | CASE NO. CV 08-04808 RGK (SHx) |
| Plaintiff, | |
| vs. | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, CONTINENTAL ASSURANCE COMPANY LONG TERM DISABILITY PLAN, | **JUDGMENT** <br> **(Court Trial)** |
| Defendants. | |

I. **INTRODUCTION**

On July 23, 2008, Kristin McCutcheon ("Plaintiff" or "McCutcheon") filed suit against Hartford Life and Accident Insurance Company ("Hartford") and the CNA Long Term Disability Plan, erroneously sued as Continental Assurance Company Long Term Disability Plan ("LTD Plan") (collectively, "Defendants").

///

///

///

1    This is an ERISA[1] action for long term disability ("LTD") benefits pursuant to a benefit plan, under Group Policy No. L 10015 ("Policy"), established by McCutcheon's employer Continental Assurance Company ("CNA"), a subsidiary of CNA Financial Corporation ("CNAF"). In 2003, Hartford purchased the Policy, along with other policies, and began administering claims shortly thereafter.

McCutcheon, who suffers from depression and other medical conditions related to Bartter's Syndrome,[2] alleges that Hartford improperly terminated her benefits under the LTD Plan.

A court trial, set for June 9, 2009, was conducted on the parties' briefs. The Court has reviewed the Administrative Record ("AR") and considered all of the arguments and evidence presented. Based on the credible evidence and reasonable inferences drawn therefrom, the Court finds in favor of Defendants.

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

This opinion serves as the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52. Any finding of fact that actually constitutes a conclusion of law is adopted as such, with the converse also being true.

///
///
///

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

[2] Bartter's Syndrome is an inherited defect in the renal tubules that causes low potassium levels (hypokalemia), low chloride levels, which in turn causes metabolic alkalosis.

2

**A.  Findings of Fact**

1. McCutcheon is a 46 year old woman who was a Claims Division Manager for CNA and was therefor a participant in the LTD Plan and covered under the Policy.

2. The Policy defines "total disability" as follows:

   "'Total Disability'; means that, because of injury or Sickness, the Insured Person is:
   
   1. Continuously unable to engage in any occupation for which he is or becomes qualified by education, training or experience; and
   2. Under the regular care of a licensed Physician other than himself."

3. The Policy limits LTD benefits for disabilities related to mental and nervous disorders to twenty-four months.

4. The essential duties of McCutcheon's occupation included managing claims supervisors in the Workers' Compensation Division of CNA.

5. On December 1, 1998, McCutcheon submitted a Short Term Disability ("STD") claim, which CNA approved. McCutcheon's STD claim was based on Major Depression/Anxiety, as certified by her therapist Terry Schenk, Ph.D. ("Dr. Schenk").

6. Shortly thereafter, McCutcheon submitted an updated STD claim form accompanied by an attending physician's statement from her primary care physician, Dr. Paul Corona ("Dr. Corona"), indicating that McCutcheon was also suffering from medical conditions including hyperaldosteronism and hypokalemia.

7. On February 19, 1999, Charles W. Paskewicz, Ph.D. ("Paskewicz") performed a medical review for CNA on McCutcheon's claim and reported that McCutcheon's symptoms associated with her mental and physical conditions seriously impaired her current level of functioning, so as to make her unable to work.

8. A March 24, 1999 medical record review by Chris Sokol, a CNA Nurse Case Manager, concluded that McCutcheon's diagnosis of juxtaglomerular hyperplasia/hypokalemia/hyperaldosteronism and bladder dysfunction were verified by the laboratory data, the medications prescribed were appropriate, and there is a high probability that her medical condition(s) were a primary factor in her present disability.

9. In April 1999, Dr. Corona sent a certification of disability to CNA stating that McCutcheon was unable to work indefinitely due to her medical conditions.

10. CNA approved McCutcheon's STD benefits through August 1999.

11. McCutcheon's fifty-two weeks of STD benefits were exhausted on September 26, 1999. CNA referred McCutcheon's claim for LTD processing and on September 28, 1999, CNA informed McCutcheon that it had approved her LTD claim.

12. In January 2000, Dr. Corona reported that McCutcheon's medical conditions were unimproved and he could not predict if or when improvement could be expected.

13. In December 2000, Dr. Schenk reported that McCutcheon remained severely impaired by her medical conditions and was unable to return to work.

14. In January 2001, McCutcheon submitted forms to CNA describing her medical conditions and impairments to her daily functioning. McCutcheon also provided CNA with the contact information for her new endocrinologist, Dr. Van Herle, so that they could obtain her treatment records.

15. In July 2001, McCutcheon submitted a Statement of Disability form to CNA, along with an accompanying attending physician's statement from Dr. Van Herle stating a diagnosis of hypothyrodism, hyperaldosteronism, hypokalemia, and several other medical conditions and reported that McCutcheon was totally disabled.

16. In September 2001, McCutcheon accepted CNA's offer to assist her with obtaining social security benefits.

17. In February 2002, Dr. Schenk reported to CNA that McCutcheon remained severely impaired.

18. On April 1, 2002, Dr. Corona reported to CNA that McCutcheon was unable to work.

19. In April 2002, McCutcheon provided to CNA updated lab test results, which showed abnormalities, including high aldosterone levels.

20. In May 2002, Dr. Van Herle provided McCutcheon's radiology reports to CNA.

21. In August 2002, CNA conducted three days of surveillance of McCutcheon and obtained approximately three minutes of videotape of McCutcheon performing activities such as operating a motor vehicle and walking to and from her mailbox.

22. In October 2002, Dr. Schenk reported to CNA that McCutcheon continued to be severely impaired and was unable to work. That same month, Dr. Van Herle reported to CNA that McCutcheon had persistent hypokalemia and hypoglycemia, which were difficult to control.

23. In October 2002, McCutcheon was awarded social security disability benefits.

24. In June 2003, CNA informed McCutcheon that it was investigating whether her disability was psychiatrically based and thus subject to the two-year limit in the Policy for mental and nervous disorders. Nonetheless, CNA continued to pay LTD benefits to McCutcheon.

25. In response to CNA's investigation, in July 2003, McCutcheon provided CNA with a certification of disability from her endocrinologist, Christine Darwin, M.D. ("Dr. Darwin"), who reported that McCutcheon suffered from medical conditions, including hyperaldosteronism, and that she could not work.

26. In 2004, Hartford purchased a block of CNA's disability business, including McCutcheon's claim, and continued to pay LTD benefits to McCutcheon.

27. In October 2005, Hartford requested McCutcheon complete another medical release and Statement of Daily Activities.

28. In January 2006, McCutcheon provided CNA with the requested medical release and Statement of Daily Activities, along with the name and phone numbers of all of the doctors that McCutcheon had seen since she last worked in September 1998, which included Dr. Corona, Dr. Schenk, Dr. Van Herle, and Dr. Alan Elias ("Dr. Elias"), an endocrinologist.

29. On February 7, 2006, Hartford sent requests via facsimile for McCutcheon's medical records from July 2003 to the present to Dr. Corona, Dr. Elias, and Dr. Michael Bryer-Ash ("Dr. Bryer-Ash").

30. On February 17, 2006, Hartford received McCutcheon's medical records from Dr. Elias. The records included office notes from November 2004 and August 2005 stating that McCutcheon has Bartter's Syndrome. The records also included a lab report indicating that in November 2004 McCutcheon had abnormal Thyroid Stimulating Hormone ("TSH") levels.

31. In February 2006, Hartford received McCutcheon's medical records from Dr. Bryer-Ash. The records included office notes from November 2003, which stated the following:

"Impression: 1. Secondary hyperaldosteronism with normal blood pressure and hypokalemia. This is atypical and of uncertain cause. If the patient had Bartter's Syndrome, high dose Aldactone would be expected to make her

hypotensive, but this is not the case. This pattern is more typical of a diuretic or laxative use, but the patient denies this. She also has no history of vomiting or diarrhea to suggest dehydration and electrolyte loss. Nevertheless, she appear to be well compensated on her present regimen. 2. Hypothyroidism. At this time she is clinically euthyroid and her last TSH was normal, and she has been on a stable dose of thyroid hormone replacement for some time. 3. The symptoms of which she is presently complaining, sound more suggestive of panic attacks than of any endocrinologic abnormality."

The records also included lab results from November 2003 and June 2003, which indicated low potassium levels and elevated aldosterone levels.

32. In April 2006, Dr. Schenk sent Hartford another certification of disability and reported that McCutcheon could not work due to pain, dizziness, fatigue, and cognitive defect.

33. In May 2006, Dr. Corona reported to Hartford that McCutcheon continued to suffer from hyperaldosteronism and chronic mood disorder.

34. In September 2006, Hartford received approximately 140 pages of medical records from Dr. Corona that spanned from 1999 to May 2006. The records included office notes and other documents discussing the following conditions: hypokalemia/low potassium levels, ostopenia, hypoglycemia, shakiness, anxiety, fatigue, headaches, insomnia, mood swings, heart palpitations, abnormal TSH and aldosterone levels, Irritable Bowel Syndrome, hiatal hernia, chronic pain, Major Depressive Disorder, Post Traumatic Stress Disorder ("PTSD"), hypothyroidism, hyperaldosteronism, hyper-reninsim, dizziness, diverticulosis, nausea, vomiting, muscle weakness, and dehydration.

35. On September 12, 2006, Maria Ramos, a Hartford claim examiner, conducted a file review and concluded that McCutcheon's medical records

from 2003 to 2006 did not demonstrate continuing disability based on a physical disorder and noted that Hartford should investigate whether McCutcheon had exhausted benefits for mental and nervous conditions. Specifically, Ramos found that although physicians provided a current diagnosis of hyperaldosteronism, the "clinicals" did not report elevated blood pressures or hypokalemia since 2003, except for one incident in 2004. She also noted that McCutcheon's aldosterone and plasma rennin activity was elevated in 2003, but there was no documentation of recent tests showing such results. Ramos also stated that Dr. Corona's conclusion that fatigue was the main factor preventing McCutcheon from working was not supported by the "clinicals" reviewed from 2003 to 2006 and that although Dr. Schenk had provided a diagnosis on 4/6/06 of depression and panic disorder/PTSD with extensive subjective symptoms, clinical notes were not provided for review.

36. On September 19, 2006, Maria Ramos sent McCutcheon a Claimant Questionnaire, which McCutcheon completed and returned along with an updated medical release. McCutcheon also provided Hartford with a list of, and contact information for, her treating doctors, including Dr. Schenk, Dr. Corona, Dr. Elias, and Dr. Sternfeld.

37. On November 28, 2006, Hartford sent McCutcheon a letter informing her that it had completed its review of her claim and was terminating her benefits.

38. McCutcheon appealed the termination on May 1, 2007 and provided Hartford with a further certification of disability dated April 7, 2007 that was signed by McCutcheon's nephrologist, Dr. Steve Tran ("Dr. Tran").

9

39. In June 2007, Hartford referred the claim to MES Solutions ("MES") for review.

40. On June 20, 2007, Dr. James Woods, an MES reviewer, completed a written report, in which he stated that the information presented did not document that McCutcheon had physical restrictions/limitations from any medical condition. Specifically, Dr. Woods reported that McCutcheon "has never been documented to have a low potassium level on multiple lab checks over several years, and she has not been documented to have any complications of hypokalemia (ie muscle weakness, syncope, or arrhythmias). She has not been documented to be volume depleted related to her spironolactone therapy. She has never been documented to have nausea/vomiting or other untoward side effects related to intake of potassium pills. In summary, there is no documentation of any physical functional limitations or restrictions in this claimant."

41. On June 26, 2007, Joye Kelly, Hartford's Appeal Specialist, wrote to McCutcheon's attorney, Ellen Serbin, to inform her that Hartford was upholding the denial on appeal and explained the reasons for doing so.

42. McCutcheon has exhausted her administrative remedies with respect to Hartford's denial of her claim for LTD benefits.

**B.  Conclusions of Law**

McCutcheon challenges Hartford's termination of LTD benefits as of November 28, 2006.

       *1.*     *<u>Jurisdiction</u>*

The Court has jurisdiction over this ERISA matter pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

       *2.*     *<u>Standard of Review</u>*

Courts review a denial of benefits under an ERISA plan de novo "unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms . . . " *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Ninth Circuit has held that in order for a plan to alter the standard of review from de novo to abuse of discretion, the plan must unambiguously provide discretion to the administrator. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006)*; see Feibusch v. Integrated Device Technology, Inc. Employee Ben Plan*, 463 F.3d 880, 883 (9th Cir. 2006).

Here, the Court finds that the LTD Plan expressly grants discretionary authority to the administrator and thus the Court will apply the abuse of discretion standard.

Specifically, the 1998 Summary Plan Description ("SPD") expressly states that the "Plan Administrator has the discretionary authority to determine eligibility for benefits and to construe the terms of the Plans." (AR 826.) In addition, the Instrument of Appointment for the CNA Integrated Disability Plan that was executed when Hartford purchased the Plan from CNA designates Hartford as the Plan Administrator and states that "Hartford shall have the full and discretionary power and authority (in addition to powers and authority set forth in the Plan): (a) to determine eligibility for benefits or coverage; (b) to decide such claims or appeals; and (c) to construe and interpret the Plan and resolve factual and all other issues." (AR 876.)

11

Nonetheless, Plaintiff contends that Hartford lacks discretionary authority because (1) the SPD is dated 1998, which is five years after CNA issued the Policy, (2) Hartford expressly disclaimed that it is the plan administrator in discovery responses, and (3) Defendants have not met their burden of showing that it provided a copy of the plan documents to Plaintiff.

The Court finds Plaintiff's contentions unavailing for the following reasons:

First, as to Plaintiff's contention that the Court cannot rely on the SPD because it is dated 1998, it appears that Plaintiff's disability began in 1998 and thus the 1998 SPD described LTD benefits at the time Plaintiff first sought benefits. Moreover, as discussed above, the SPD expressly grants discretionary authority to the Plan Administrator and since the Policy is silent as to discretionary authority, there is no reason to believe, and the parties have not otherwise shown, that any other plan document contradicts the SPD's grant of discretionary authority.[3]

Second, as to Plaintiff's contention that Hartford expressly disclaimed that it is the Plan Administrator in discovery responses, the Court finds Plaintiff's contention unpersuasive because (1) the Instrument of Appointment clearly identifies Hartford as the "Plan Administrator" (AR 876), (2) in its Answer, Defendants admit that when Hartford purchased CNA's group disability business, it became the claim fiduciary for the LTD Plan (Answer ¶ 4), (3) the parties state, in their Joint Rule 26(f) Report, that the "plan is funded and administered by Hartford . . ." (Rule 26(f) Report 2), and (4) in acquiring

---

[3] When interpreting the terms of an ERISA plan, courts examine the plan documents as a whole. *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002). A summary plan description is part of ERISA plan documents. *Id.*

12

CNA's group disability business, Hartford acquired all of the rights and liabilities of that business, including CNA's discretionary authority under the Plan, *see SCM Corp. v. Berkel, Inc.*, 73 Cal. App. 3d 49 (1977); *Giannone v. Metropolitan Life Ins. Co.*, 311 F. Supp. 2d 168 (D.Mass. 2004).

Third, as to Plaintiff's contention that Defendants have not met their burden of showing that a copy of the document under which discretion is claimed was provided to Plaintiff pursuant to 29 U.S.C. § 1024(b)(1)(B), the Court finds that Hartford has shown that it provided Plaintiff with a copy of the plan documents. (AR 678.) Moreover, Plaintiff's reliance on *Gertjejansen v. Kemper Ins. Co.*, 2008 WL 1787484 (9th Cir. 2008), a Ninth Circuit unpublished memorandum opinion, is inappropriate because that case (1) is not binding authority, 9th Cir. R. Rule 36-3(a), and (2) does not expressly hold that in order for a court to apply the abuse of discretion standard of review, the administrator must prove that it provided copies of the plan documents to plan participants, even when, as here, the plaintiff has failed to present evidence showing she did not receive the plan documents.

Thus, since the LTD Plan granted discretionary authority to Hartford to determine eligibility for benefits and construe the terms of the plan, the Court will apply the abuse of discretion standard of review.

### 3. *Conflict of Interest*

In ERISA cases, evidence of a conflict should "be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Firestone*, 489 U.S. at 115 (quoting Restatement § 187, Comment *d*). In determining whether there is an abuse of discretion, a district court's review must be "informed by the nature, extent, and effect on the decision

making process of any conflict of interest that may appear on the record."[4] *Abatie*, 458 F.3d at 967. Looking at all the facts and circumstances, the district court must "decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict." *Id.* at 968.

A conflict of interest can arise when the entity that administers the plan determines whether a participant is eligible for benefits and pays benefits out of its own pockets. *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2346 (2008).

Here, it appears that Hartford operates under a conflict of interest because Hartford determines whether a participant is eligible for benefits and pays benefits out of its own pockets. (Rule 26(f) Report 2;)

Plaintiff has also presented other evidence suggesting a conflict because (1) evidence filed under seal with the Court, shows a financial relationship between MES (the entity that reviewed McCutcheon's claim) and Hartford, which McCutcheon contends "provides clear motivation for MES to preserve its ever increasing lucrative financial relationship with Hartford by providing Hartford with medical reviews to substantiate claim terminations" (Reply 22), and (2) Hartford assisted McCutcheon with obtaining social security disability benefits, but Hartford has now taken an inconsistent position by denying McCutcheon's claim for disability benefits. (AR 605-618.)

With these principles in mind, the Court considers the facts and circumstances surrounding McCutcheon's claim (contained in the Administrative Record) and

---

[4] The Court may consider extrinsic evidence. *Abatie*, 458 F.3d at 967.

14

Hartford's reasons for terminating McCutcheon's claim for LTD benefits.

*4. <u>Discussion</u>*

As noted above, Hartford terminated McCutcheon's LTD benefits on November 30, 2006 based on its determination that McCutcheon's disability was based on a mental disorder and was thus subject to the Plan's twenty-four month limit for benefits based on such disorders. (AR 136-140.) Hartford later reconsidered, on appeal, its decision denying McCutcheon's claim for LTD benefits and upheld its decision as correct. (AR 75-77.) For the following reasons, the Court finds that Defendants did not abuse their discretion in terminating McCutcheon's claim for LTD benefits.

Plaintiff contends that Hartford failed to provide a full and fair review, as required by ERISA, because it failed to inform McCutcheon (1) as to what information it required to support a continuation of her benefits, (2) that it had no intention of obtaining her updated medical records, and (3) "prior to its unilateral closure of the record, that it desired to speak with Dr. Tran in connection with her appeal" (Plf's Trial Brief 21). Plaintiff, however, has failed to cite evidence in the record supporting some of these contentions. Plaintiff has also failed to cite binding authority[5] requiring a plan administrator to inform a plan participant whether it intended to obtain the participant's

---

[5] Plaintiff relies on *Saffron v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008) to support her contention that Hartford failed to conduct a full and fair review of her claim determination by not telling her about the specific evidence that it required to support her claim. The court's decision in *Saffron*, however, does not support Plaintiff's contentions in this case because unlike the defendant in that case, here, it appears that Hartford did undertake a meaningful dialogue with McCutcheon in connection with its termination of her LTD benefits.

15

updated medical records[6] and that it desired to speak with a particular doctor in connection with a participant's appeal.

Moreover, the administrative record supports Hartford's contention that it did provide a full and fair review because Hartford (1) informed McCutcheon of its intention to investigate whether her claim was barred by the mental/nervous twenty-four month limit and invited her to submit documentation supporting her claim, (2) contacted McCutcheon's doctors on several different occasions to discuss her condition and the nature of her disability, (3) mailed letters to her doctors informing them that Hartford would be contacting them regarding McCutcheon's claim and her medical condition, (4) reviewed her voluminous medical records from several doctors that included numerous lab and diagnostic test results, (5) invited McCutcheon to submit all documents supporting her claim after it initially notified McCutcheon that it was terminating her benefits, and (6) explained to McCutcheon on several different occasions, the basis for its decision to deny her claim and related appeal and informed her of available avenues to dispute its decision. (AR 75-80, 84-87, 136-140, 160-168, 354-356, 366, 412-13.)

As to McCutcheon's contention that there is no credible support for Hartford's termination of her LTD benefits, the Court finds that, contrary to McCutcheon's contentions, the Administrative Record *does contain* credible support for Hartford's termination of her LTD benefits because (1) Hartford found that, even though McCutcheon's doctors reported that she could not work due to her disability, those doctors' records and lab tests did not support the doctors' conclusions, (2) the mere fact that Dr. Woods did not treat McCutcheon does not render his opinion invalid and, in fact, Dr. Woods's report relied on statements and records from as late as 2006, from

---

[6] It appears that, a few months before it terminated her benefits, Hartford had actually received McCutcheon's medical records from several doctors and relied on these records in rendering its decision. (AR 340-7, 329-332, 174-315.)

16

McCutcheon's own doctors that her condition may not be consistent with a diagnosis of Bartter's Syndrome and was more consistent with her diagnosis of depression, and (3) it appears that Hartford may have considered McCutcheon's medications when rendering its decision and Plaintiff has not shown that Hartford failed to do so and that such a failure enabled Hartford to terminate McCutcheon's benefits. (AR 84-87, 143, 160-168, 174-315, 340-347, 329-332.)

In light of the foregoing, the Court finds that Hartford did not abuse its discretion by terminating McCutcheon's claim for LTD benefits.

### III.  CONCLUSION

For the foregoing reasons, the Court grants judgment in favor of Defendants.

July 1, 2009  
Date

R. Gary Klausner  
United States District Judge